UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION
CRIMINAL CASE NO. 05-30-DCR

UNITED STATES OF AMERICA,                                    PLAINTIFF

VS.                            **REPORT AND RECOMMENDATION**

ROBERT DEMLING, et als.                                     DEFENDANTS

*******

This matter is before the Court upon the "Motion to Suppress" (DE#200) filed by the co-defendant Robert Demling. An evidentiary hearing was held on July 14, 2005, with the defendant personally present and represented by counsel. Having carefully considered the entire record, including the Motion (DE#200), Response (DE#262), Reply (DE#289), and the testimony and oral arguments at the hearing (DE#281, Transcript), the Magistrate Judge makes the following proposed findings of fact and conclusions of law:

## I.  Proposed Findings of Fact

On April 27, 2005, at the beginning of his shift at the Frankfort State Police Post, KSP Trooper D. S. Fugate was informed by KSP Sgt. David Decker that a silver Ford pickup truck, driven by a white male, would be traveling on interstate I-64, and reportedly would be carrying a load of marijuana, traveling in a westward direction from London toward Louisville. Trooper Fugate testified that he was told to "observe for the vehicle". TR 8-9, 16.  Trooper Fugate was given the license plate number of the truck and was directed to proceed to I-64.  He pulled into a crossover in the median of the highway to watch for the suspect vehicle.  His cruiser was pointed eastwardly, so that he could observe westbound traffic. While he was waiting, KSP Trooper Robert Hawkins, who was doing regular patrol on I-64, pulled his cruiser alongside, facing the opposite direction (west-bound), and spoke with Trooper Fugate, who told him his purpose for being there.  TR 9-10, 24, 36-39. Soon thereafter, the troopers spotted a vehicle that fit the description drive by their location.  Trooper Hawkins pulled out behind it, heading west-bound on I-64. Trooper Hawkins told Trooper Fugate he would "check the truck".

1

Trooper Fugate turned his cruiser around, and as soon as there was a break in traffic, some 35 to 40 seconds later, also pulled onto the highway to follow the silver pickup truck. TR 18.

Trooper Hawkins testified at the hearing that while following the suspect vehicle, he observed it sway from line to line on the highway, although it did not actually cross the center-line. ("It would touch the fog line, back to the center line.") TR 24, 45. He observed the driver (the only occupant) of the truck watching him from his rear view mirror. TR 24, 44. Trooper Hawkins testified that the truck was traveling at a rate of speed between 69 and 71 miles per hour, in excess of the posted speed limit of 65 miles per hour. TR 25, 30. He also indicated that he could see that the driver was not wearing a seat belt. TR 24-25, 46.

Trooper Hawkins determined the truck was the "right vehicle" by calling Trooper Fugate to confirm the license plate number. TR 17-18. He then activated his blue flashing lights, which apparently also activated his cruiser's video camera and audio recorder. However, as Trooper Hawkins explained at the hearing, the audio portion of the recording equipment was not operating correctly at the time due to an improperly installed receiver antenna. TR 28-29, 33-34. The malfunctioning antenna was subsequently repaired. Meanwhile, the silver truck pulled over and stopped just before the Shelby County line. TR 44. The location of the stop was approximately four miles west of where the troopers first spotted the defendant drive by the crossover where they were parked. Trooper Hawkins approached the driver's side of the truck. Upon asking the driver for his license and registration, Trooper Hawkins noticed that the driver was not wearing glasses, although his license had a vision restriction. Trooper Hawkins cited the driver, Robert Demling, for careless driving (due to the swaying of the vehicle and excess speed), failure to wear a safety belt, failure to notify DOT on an address change, and failure to wear corrective eyeglasses while driving. TR 27.[1]

Trooper Hawkins testified that he had noticed a large shrink-wrapped Tupperware-type tub sitting in the open bed of the silver truck. TR 26. He asked Demling if he had anything illegal in the truck. TR 25. According to the trooper, Demling indicated he did not. TR 25. Trooper Hawkins testified that he asked Demling "if he would give consent to search the vehicle", and that Demling said "yes, he would [give consent]". TR 25, 31. Shortly after Trooper Hawkins had pulled Demling over, Trooper Fugate arrived and approached the silver truck.

---

[1]The officer was not certain that the citation included the charge for not wearing eyeglasses.

Trooper Hawkins testified that Trooper Fugate asked him if the driver had consented [to a search of the vehicle], and that he responded that Demling had consented. TR 26, 32.

Both troopers testified that the defendant reaffirmed his consent to search after Trooper Fugate arrived at the scene of the stop. TR 5-7, 32. Trooper Hawkins testified that Trooper Fugate asked Demling if he minded if he cut the tape and looked in the tub, and that Demling responded that he had "no problem" with that. TR 26. At the hearing, Trooper Fugate also testified that he had asked Demling orally for consent to search the truck and to look inside the plastic tub, and that Demling had consented. DE#5, 6. This is plainly audible on the tape. Upon opening the plastic tub, the officers discovered marijuana inside. After arresting Demling, the officers searched the interior of the truck's cab. TR 26. The officers located a black bag containing currency behind the driver's seat. TR 27. Demling also had several thousand dollars in U.S. currency in his pockets. TR 27. Trooper Fugate transported the defendant to the Frankfort State Police Post.

## II.  Issues Presented

Defendant Demling argues that the trooper lacked probable cause to believe a traffic violation had actually occurred, that the truck was pulled over for the actual purpose of searching for drugs, and that any evidence gained from the warrantless search of the truck should be suppressed.

The United States responds that the trooper observed at least one traffic violation and could lawfully stop the defendant on such basis, regardless of any desire on the officer's part to investigate drug-trafficking as well. The United States asserts that Demling consented to the search of the plastic tub, and that after the troopers discovered the marijuana, they properly arrested Demling and could then search the passenger compartment of the truck "incident to his arrest".

## III.  Proposed Conclusions of Law

### Fourth Amendment

A person's right to be free from unreasonable searches and seizures arises from the Fourth Amendment to the United States Constitution, which specifically provides:

"The right of people to be secure in their persons, houses,

> papers, and effects, against unreasonable searches and
> seizures, shall not be violated, and no Warrants shall issue,
> but upon probable cause, supported by Oath or affirmation,
> and particularly describing the place to be searched, and
> the persons or things to be seized."

Warrantless searches are per se unreasonable under the Fourth Amendment.  Katz v. United States, 389 U.S. 347, 357 (1967); United States v. Roark, 36 F.3d 14 (6th Cir. 1994). There are however, a number of judicially recognized exceptions to the warrant requirement, such as voluntary consent. See, e.g., Mincey v. Arizona, 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The burden is on the government to prove that a warrantless search falls within an exception to the warrant requirement. Id.

Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." United States v. Graham, 275 F.3d 490, 509 (6th Cir. 2001); United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). The existence of "probable cause" is, of course, determined by the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230-31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

## Issue 1: Whether the Trooper Properly Stopped Defendant's Vehicle for an Observed Traffic Violation

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Wren v. United States, 517 U.S. 806, 809-810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996), citing Delaware v. Prouse, 440 U.S. 648, 659, 99 S.Ct. 1391, 1399, 59 L.Ed.2d 660 (1979) and Pennsylvania v. Mimms, 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977)(per curiam). "Probable cause is said to exist where an officer reasonably believes that an individual  has committed a violation, even if in hindsight this was not the case."  United States v. Copeland, 321 F.3d 582, 592 - 593 (6th Cir. 2003);  Klein v. Long, 275 F.3d 544, 550 (6th Cir. 2001)("Probable cause is assessed from the perspective of a reasonable officer on the scene, rather

4

than with the 20/20 vision of hindsight."), quoting <u>Kostrzewa v. City of Troy</u>, 247 F.3d 633, 639 (6th Cir. 2001).

The Supreme Court has held that the constitutional reasonableness of a traffic stop does not depend on the actual motivation of the officer making the stop. <u>Wren</u>, *supra*, 517 U.S. at 813; <u>United States v. Herbin</u>, 343 F.3d 807, 809 (6th Cir. 2003). The Sixth Circuit Court of Appeals has explained that if police have probable cause to stop a vehicle for a traffic violation, "then any claim of pretext is irrelevant for Fourth Amendment purposes." In <u>Herbin</u>, the officers admitted that their primary mission was to pursue a drug trafficking investigation, not to enforce the traffic laws. *Id.* at 808. <u>Gaddis v. Redford Township</u>, 364 F.3d 763, 769 fn. 4 (6th Cir. 2004). "*Wren* simply held that, when a defendant argued that his vehicle was stopped for improper reasons on the pretext of violating a traffic regulation, the officer's improper motivations would not render the stop a violation of the Fourth Amendment if the police had probable cause to believe that a traffic violation had occurred." <u>Id</u>.

In the present case, Trooper Hawkins testified repeatedly that he witnessed Demling commit several possible traffic violations. Trooper Hawkins then turned on his blue flashing lights (and the video/audio recorder). Trooper Hawkins testified that "what I observed [prior to activating the blue lights] was not on the videotape." TR 47. Thus, the fact that the violations are not visible on the videotape does not actually support the defendant's argument for suppression. Absent an observed traffic violation, Trooper Hawkins would have had insufficient reason to pull the truck over to the side of road. The testimony of this experienced officer was credible in all material respects. The fact that, prior to following the truck, he had just been informed that the truck might be carrying contraband does not require suppression.

The defendant's reply brief correctly points out that a peace officer may not stop a person for failing to wear a seat belt "if the officer has no other cause to stop the person ...." See KRS 189.125. However, here the officer stopped Mr. Demling for what he perceived as a violation of KRS 189.290 (failing to operate a vehicle in a careful manner). He based this conclusion upon the fact that Mr. Demling was driving at a speed which exceeded the speed limit, combined with his observation that Mr. Demling's vehicle was weaving from the centerline to the fog line, touching both lines. In fact, the officer could have stopped the vehicle solely due to the fact that it was exceeding the posted speed limit.

5

In United States v. Burton, 334 F.3d 514, 516-17 (6th Cir. 2003), the Sixth Circuit Court of Appeals held that the Fourth Amendment permits an officer to stop a vehicle for a traffic violation, regardless of the officer's subjective motivation for the stop. See also,  United States v. Hill, 195 F.3d 258, 264 (6th Cir. 1999)("an officer may stop a vehicle for a traffic violation when his true motivation is to search for contraband, as long as the officer had probable cause to initially stop the vehicle"); United States v. Bailey, 302 F.3d 652,  656- 57 (6th Cir. 2002)(holding that officers had lawfully stopped a motorist they had seen driving down the wrong side of the road and that the allegation that the officers were making traffic stops as a 'pretext' to investigate complaints of drug activity was irrelevant because the officers "had probable cause to stop [the motorist] for a traffic violation"); and see United States v. Ferguson, 8 F.3d 385, 391 (6th Cir. 1993)(en banc).

**Issue 2**: **Whether Demling Validly Consented to the Search of the Plastic Tub**

There are a number of judicially recognized exceptions to the warrant requirement, including consent. See Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); Mincey, 437 U.S. at 390, 98 S.Ct. 2408. The burden is on the government to prove that a warrantless search falls within an exception to the warrant requirement. Id. An "officer with consent needs neither a warrant nor probable cause to conduct a constitutional search." United States v. Jenkins, 92 F.3d 430, 436 (6th Cir. 1996), citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).

For the consent to be valid, it must be given voluntarily. Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Schneckloth, 412 U.S. at 220. When the validity of a warrantless search is based on consent, the government must show the consent was "unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion." United States v. Tillman, 963 F.2d 137, 143 (6th Cir. 1992). In assessing whether consent is voluntary, courts examine various factors, including age, intelligence and education of a person,  whether such person understands his right to refuse consent; whether the person understands his constitutional rights, the length and nature of any detention, and the use of objectively coercive conduct or intimidation by officers. See United States v. Riascos-Suarez, 73 F.3d 616, 625 (6th Cir. 1996); United States v. Elkins, 2002 WL 1777790, *6 (6th Cir. 2002).

6

"The question of whether a consent to search is voluntary and knowing is a question of fact to be determined from totality of all the circumstances."  See Schneckloth, 412 U.S. at 227. The burden of establishing the validity of the consent is upon the government. Id. The government must demonstrate by clear and positive testimony that the defendant consented to the search. United States v. Haynes, 301 F.3d 669 (6th Cir. 2002). In United States v. Carter, – F.3d –, 2004 WL 1752392 (6th Cir. (Ky.)), the Sixth Circuit Court of Appeals observed that:

> "It is well-settled that a person may waive his Fourth Amendment rights by consenting to a search.  Davis v. United States, 328 U.S. 582, 593-94 (1946). Consent to a search "may be in the form of words, gesture, or conduct." United States v. Griffin, 530 F.2d 739, 742 (7th Cir. 1976). In whatever form, consent has effect only if it is given freely and voluntarily. Bumper v. North Carolina, 391 U.S. 543, 548 (1968)."

In the present case, the recording of the encounter was not audible with respect to much of the actual conversation, due to faulty installation of the receiver antenna on the police cruiser. Despite this, the recording does establish that the officers and defendant engaged in an ordinary business-like conversation during a traffic stop of ordinary duration, and that no objectively coercive means (such as physical intimidation or force) were used by the officers to obtain consent from the defendant. The defendant is an adult of ordinary intelligence who was capable of consenting. Both Trooper Hawkins and Trooper Fugate testified that the defendant orally gave consent for them to look inside the plastic tub. This exchange is recorded on both the video and the audio.  The Magistrate Judge finds that the officers were credible witnesses and considers their testimony to be  truthful. The government has carried its burden of showing through clear and positive testimony that the defendant validly consented.

**Issue 3**: **Whether the Post-Arrest Search of the Passenger Compartment of Defendant's Pick-up Truck was Permissible as "Incident to His Arrest**"

Upon obtaining defendant's consent and looking inside the plastic tub, the officers discovered marijuana and promptly arrested Demling. Because a "custodial arrest of a suspect based on probable cause is a reasonable intrusion

7

under the Fourth Amendment, ... a search incident to the arrest requires no additional justification." United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); and see, Gustafson v. Florida, 414 U.S. 260, 266, 94 S.Ct. 494, 38 L.Ed.2d 427 (1973)("upon arresting petitioner ...and taking him into custody, [the officer] was entitled to make a full search of petitioner's person incident to that lawful arrest"); United States v. Montgomery, 377 F.3d 582, 586 (6th Cir. 2004)(a police officer may conduct a search of a person incident to a lawful custodial arrest), citing Robinson, 414 U.S. at 235 (explaining that the reasoning behind this exception is the "need to disarm the suspect in order to take him into custody [and] ... the need to preserve evidence on his person for later use at trial").

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape.....And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule." Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The Supreme Court extended this exception in New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981), holding that: "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." As the Sixth Circuit Court of Appeals explained in United States v. Kennedy, 100 F.3d 957, 1996 WL 636048 at *1 (6th Cir. (Ky.)), "[w]e have strongly adhered to the bright-line rule expressed in *Belton*, that a police officer may search the passenger compartment of a vehicle so long as an occupant of that vehicle has been arrested and the search is contemporaneous with the arrest."

In the present case, the record plainly shows, and the parties do not dispute, that Demling was an "occupant" of a vehicle when stopped and then arrested. The United States Supreme Court has explained that *"Belton* allows police to search a car's passenger compartment incident to a lawful arrest of both 'occupants' and 'recent occupants'." Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 2128, 158 L.Ed.2d 905 (2004). In *Thornton*, the Supreme Court held that, upon arresting the suspect as a "recent occupant" still in close proximity to his vehicle, the officers' search of the vehicle was lawful. Id., 124 S.Ct. at 2130. Also see United States v. Herndon, 393 F.3d 665 (6th Cir. 2005), *judgment vacated on other grounds,* 125 S.Ct. 2279 (2005). Thus, in the present case, once the officers lawfully arrested Demling for possessing the marijuana, the officers could lawfully search Demling, as well as the passenger compartment of his pickup

8

truck. Defendant is not entitled to suppression of the evidence seized.

## <u>RECOMMENDATION</u>

It is **RECOMMENDED** that "Motions to Suppress" (DE#200) by the co-defendant Robert Demling should be **DENIED**.

Particularized objections to this Report and Recommendation must be filed within ten (10) days of the date of service of the same or further appeal is waived. <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981); <u>Thomas v. Arn</u>, 728 F.2d 813 (6th Cir. 1984), *affirmed*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. See <u>Howard v. Secretary of Health and Human Services</u>, 932 F.2d 505 (6th Cir. 1991). A party may file a response to another party's objection within ten (10) days after being served with a copy thereof. Rule 72(b), Fed. R.Civ.P.

This the 9th day of August, 2005.

Signed By:

*J.B. Johnson, Jr.*

United States Magistrate Judge