UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 05-30-SS-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ROBERT N. DEMLING, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On August 9, 2005, Magistrate Judge J.B. Johnson, Jr., filed a Report and Recommendation ("R&R") concerning Defendant Robert N. Demling's Motion to Suppress. [Record No. 200] The R&R recommends that this motion be denied. [Record No. 299] The Defendant objected to the report and recommendation and the United States responded to the Defendant's objections. Thus, the motion is ripe for review. Because the Court concludes that the stop and subsequent search of the Defendant's vehicle was lawful, the Court will deny the Defendant's motion to suppress.

I.      Facts

On April 27, 2005, Sergeant David Decker of the Kentucky State Police ("KSP") informed KSP Trooper David Fugate that a silver Ford pick-up truck driven by a white male would be traveling on Interstate 64 from London, Kentucky, to Louisville Kentucky. Sergeant Decker told Trooper Fugate that the vehicle was believed to be transporting marijuana. Trooper Fugate was given the license plate number of the truck and was told to "observe the vehicle."

Based on this information, Trooper Fugate went to mile marker 50 on I-64 to watch for the truck described by Sergeant Decker.  About 20 minutes later, KSP Trooper Robert Hawkins saw Trooper Fugate at his post and pulled his cruiser beside him.  Trooper Fugate informed Trooper Hawkins of his purpose for being there.  Trooper Hawkins then joined Trooper Fugate in watching for the silver truck.

Within a few minutes, the troopers observed a truck matching the description that had been given to them.  Trooper Hawkins pulled-out behind the vehicle and Trooper Fugate verified that the license plate number of the truck was the same as one given to him by Sergeant Decker. While following the truck, Trooper Hawkins observed it swerving back and forth from the center line to the fog line.  He also testified that the truck was traveling between 69 and 71 miles per hour, which was in excess of the speed limit of 65 miles per hour.  In addition, he stated that he could see that the driver of the truck was not wearing a seatbelt.  At that point, Trooper Hawkins engaged his emergency equipment (blue lights, video camera and audio recorder) and stopped the truck.

Trooper Hawkins approached the vehicle on the driver's side.  He asked the driver for his license and registration.  In addition, Trooper Hawkins observed that the driver was not wearing glasses, although his license had a vision restriction listed.  The officer proceeded to cite the driver, Robert Demling, for careless driving, failure to wear a safety belt, failure to notify DOT of an address change, and failure to wear corrective lenses while driving.

At the evidentiary hearing before the Magistrate Judge, Trooper Hawkins testified that, during the stop, he noticed a large shrink-wrapped Tupperware tub sitting in the bed of the truck.

He asked Demling if he would consent to a search of the truck and Demling responded that he would give consent for the search. When Trooper Fugate arrived on the scene, he asked if Demling had consented to the search and Trooper Hawkins informed him that Demling had given consent. Both troopers testified at the hearing that Demling reaffirmed his consent to search after Trooper Fugate arrived at the scene of the stop. They also testified that Trooper Fugate specifically asked Demling if he could look in the Tupperware tub and that Demling said that he could. When Troopers Hawkins and Fugate opened the tub, they discovered marijuana inside. Demling was then placed under arrest and, at that point, the troopers searched the passenger compartment of the truck. The troopers located a black bag containing currency behind the driver's sear. In addition, they discovered several thousand dollars in U.S. currency in Demling's pockets.

## II.    The Motion to Suppress

In support of his motion to suppress the evidence seized from the truck, Demling argues that his vehicle was stopped and searched without a warrant and without probable cause or legal authority. Specifically, he contends that the troopers lacked probable cause to believe that a traffic violation had occurred and, instead, simply pulled him over simply to search for drugs. Therefore, Demling argues that the evidence seized from the search of the truck should be suppressed. The United States contends that the officers observed at least one traffic violation and, therefore, lawfully stopped Demling's vehicle. The United States further argues that Demling consented to the search of the tub in which they found marijuana and that, after he was arrested, they performed a lawful search of the cab of the truck incident to his arrest.

The issue raised by Demling regarding legality of the stop was addressed in the Supreme Court in *Wren v. United States*, 517 U.S. 806, 812-13 (1996). There, the Court held that the legality of a traffic stop turns on the validity of the officer's objective explanation for making the stop – not his or her subjective intentions. Under *Wren*, a traffic stop will not be invalidated under the Fourth Amendment on the ground that the officers stopped the car for "pretextual" reasons. Specifically, the *Wren* court stated that "[s]ubjective intentions pay no role in ordinary, probable-cause Forth Amendment analysis." *Id*. at 813. Thus, even if Trooper Hawkins and Trooper Fugate's subjective motivation in stopping Demling was to investigate the alleged drug activity that had been reported to them, the stop was not in violation of the Fourth Amendment if the officers had objectively reasonable justifications for their actions. This Court finds that such objective, reasonable justification was present here.

At the hearing before Magistrate Judge Johnson, Trooper Hawkins testified that he observed Demling's truck swerve back and forth from the center line to the fog line. He also indicated that Demling was traveling from 69 to 71 miles per hour in a 65 mile per hour speed zone. In addition, he stated that he observed that Demling was not wearing his seat belt. Based on these traffic violations, Trooper Hawkins had an objective basis for stopping Demling's truck.[1]

---

[1] The Defendant argues that Demling's alleged violation of Kentucky's seatbelt law was not a permissible reason for stopping his truck inasmuch as K.R.S. § 189.125(7) specifically prohibits the stop of a vehicle based solely on a seatbelt violation. However, Trooper Hawkins testified that he also observed Demling traveling in excess of the speed limit and weaving from the center line to the fog line. These were objectively legitimate reasons for stopping the truck.

-4-

Demling also challenges that credibility of Trooper Hawkins and Trooper Fugate's testimony, arguing that the Court should make a "practical common-sense" determination of why the truck was stopped. However, the Magistrate Judge conducted an evidentiary hearing on this motion and after listening to the testimony and evaluating the evidence presented, determined that the testimony of the officers was "credible in all material respects." Inasmuch as the Magistrate Judge was in a better position to judge the credibility of the officers' testimony, this Court agrees with the Magistrate Judge and finds that the officers had an objectively reasonable justification for stopping Demling's truck. Therefore, this Court finds that the officers conducted a lawful stop.

At the hearing, Magistrate Judge Johnson also reviewed the recording from Trooper Hawkins' cruiser. The Magistrate Judge noted that this recording confirmed the troopers' testimony that Demling consented to the search of the Tupperware tub in the back of the truck. After reviewing this recording and the testimony of the officers, the Magistrate Judge concluded that Demling orally gave consent for the officers to look inside the plastic tub. Notably, Demling has not challenged the fact that he consented to the search of the tub. Rather, he argues that his consent "flow[ed] from an illegal stop" and, therefore, the "evidence seized must suppressed." [Record No. 289, p. 6] Based on these facts, the Court agrees with Magistrate Judge's conclusion that Demling validly consented to the search of the tub containing the marijuana.

The Court also agrees with the Magistrate Judge's conclusion that the search of the passenger compartment of Demling's truck was a lawful search incident to his arrest. After the officers found marijuana in the Tupperware tub, they arrested Demling, searched his person, and

the passenger compartment of his pickup truck.  In *Chimel v. California*, 395 U.S. 752 (1969), the Supreme Court held that "[w]hen an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape . . . [a]nd the area into which an arrestee might reach in order to grab a weapon or evidentiary items." *Id*. at 762-63.  Later, in *New York v. Belton*, 453 U.S. 454 (1981), the Supreme Court extended this exception holding that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id*. at 460.  As noted by the Magistrate Judge, the parties have not disputed that Demling was an "occupant" of the pickup truck.  Inasmuch as he was lawfully arrested for possessing the marijuana found in the Tupperware tub, the officers subsequently performed a lawful search of his person and  the passenger compartment of his pickup incident to that arrest.

### III.    Conclusion

Having reviewed the record *de novo* in light of the Defendant's objections, 28 U.S.C. § 636(b)(1)(C), and being otherwise sufficiently advised, the Court concurs in the Report and Recommendation of the Magistrate Judge.  [Record No. 299]  Accordingly, it is hereby

**ORDERED** as follows:

1.    The Defendant's Motion to Suppress [Record No. 200] is **DENIED**;

2.    United States Magistrate Judge J.B. Johnson, Jr.'s Report and Recommendation [Record No. 299] is **ADOPTED** and **INCORPORATED** in full by reference; and

3.    The Defendant's objections [Record No. 306] to this report are **OVERRULED**.

This 19th day of August, 2005.

 Signed By:

*__Danny C. Reeves__*

**United States District Judge**